CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

SAILAJA M. PAIDIPATY (NYBN 5160007)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    sailaja.paidipaty@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 24-0412 WBS |
| Plaintiff, | **UNITED STATES SENTENCING MENORANDUM** |
| v. | Date: April 29, 2026 |
| ELIJAH DOMINGUEZ, | |
| Defendant. | |

## I.    INTRODUCTION

In June 2024, Defendant Elijah Dominguez threatened to kill a federal magistrate judge and the judge's deputy for a perceived slight related to a civil lawsuit. The two victims were simply doing their jobs within the court system; and for that, they found themselves on the receiving end of terrifying emails. Dominguez's actions must be understood against a backdrop of increasing violence against public figures. Even though he did not physically act on his threats, the verbal abuse alone is alarming and cannot be accepted as an unavoidable consequence of public service. A meaningful custodial sentence is warranted, and here, Dominguez has served a Guidelines sentence of nearly 22 months. This

1

USA SENT. MEM.
CR NO 24-0412 WBS

time of imprisonment, Dominguez's longest period of continued incarceration, appropriately recognizes the severity of the conduct and holds Dominguez accountable for his actions.

From here, a three-year period of supervision with stringent conditions and oversight by the U.S. Probation Office vindicates the other statutory sentencing factors.  In determining an appropriate sentence, the Court must consider Dominguez's long history of mental health challenges coupled with housing and environmental instability.  Protecting the community and deterring Dominguez from similar crimes requires continued mental health treatment, supportive housing, and compliance oversight.  The government respectfully recommends that this Court impose a sentence of time served, followed by three years' supervised release subject to strict conditions, and a $200 mandatory special assessment.

## II.   <u>PROCEDURAL POSTURE</u>

On July 4, 2024, the Honorable Jeremy D. Peterson, U.S. Magistrate Judge, issued a criminal Complaint charging Dominguez with threatening to assault or murder a federal official, in violation of 18 U.S.C. § 115(a)(1)(B), (b)(4).  Dkt. 1.  Four days later, the defendant was arraigned on the charges and detained pretrial following a detention hearing.  *See* Dkt. 5.  On July 22, 2024, a federal grand jury returned an Indictment charging Dominguez with two counts of threatening to assault or murder a federal official.  Presentence Report ("PSR") ¶ 1.

As this Court well knows, following his arraignment on the Indictment, Dominguez displayed concerning behavior indicating that he may not be competent to stand trial.  Following two psychological evaluations and a competency hearing, the Court found by a preponderance of the evidence that Dominguez suffered from a mental disease or defect that rendered him mentally incompetent to the extent that he was unable to assist properly in his defense.  Dkt. 68.  The Court ordered Dominguez committed to the custody of the Attorney General for hospitalization and treatment to determine whether he could be restored to competency.  *Id.*

Subsequently, after several months of treatment and observation, psychological professionals with the Bureau of Prisons (BOP) determined that Dominguez had been restored to competency.  The Court held an additional competency hearing and found by a preponderance of the evidence that the defendant had recovered to such an extent that he was able to understand the nature and consequences of

2

USA SENT. MEM.
CR NO 24-0412 WBS

the proceedings against him and to assist properly in his defense  *See* Dkts. 95, Minute Entry; 98, Order.

Having been restored to competency, Dominguez entered a guilty plea to both counts of the Indictment pursuant to a plea agreement with the government.  *See* Dkts. 95, Minute Entry; 97, Plea Agreement.

**III.    OFFENSE CONDUCT**

The government agrees with the recitation of the offense conduct in the PSR and encourages this Court to adopt it.  The government's argument below highlights certain key facts for the Court's recommendation in fashioning an appropriate sentence.

**IV.    SENTENCING RECOMMENDATION**

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).  Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others: 1) the nature and circumstances of the offense and the history and characteristics of the defendant; 2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; and 3) the need for the sentence imposed to afford adequate deterrence to criminal conduct.

As with any case, the Court begins its analysis with the U.S. Sentencing Guidelines.  The parties agree that the total offense level is 12, which at a Criminal History Category of IV, as calculated by the U.S. Probation Office ("Probation"), results in an advisory range of 21 to 27 months' imprisonment. Consistent with the plea agreement, and after weighting the statutory sentencing factors under 18 U.S.C. § 3553(a), the government recommends a sentence of time served (a Guidelines sentence), followed by three years of supervised release with special conditions addressing Dominguez's mental health, and a $200 special assessment.  This sentence balances the severity of the conduct with Dominguez's long history with mental illness.

**A.    Dominguez's threatened two civil servants.**

On a Sunday morning, Victim 2 in this case, a former federal courtroom deputy, was reviewing

USA SENT. MEM.
CR NO 24-0412 WBS

and responding to work email when Dominguez sent his threats.  Angry with the deputy's response that the Court could not respond to ex parte communications, Dominguez said, "…I'm not going to play this game with you[.]  I'm just going to start killing public officials and I'm going to kill your family too."  PSR ¶ 10.  Simply for doing his/her job, and in fact by going above and beyond and working on weekends, Victim 2 became the target of Dominguez's ire.

Based on nothing but distrust for authority, Dominguez convinced himself that Victim 1, a federal magistrate judge overseeing his civil lawsuit against the Contra Costa Library, threw away paperwork that he filed with the Court.  He responded by threatening to send a hitman to Victim 1's home and attached a screenshot of a building that law enforcement later confirmed was not the judge's home.  PSR ¶ 10.  Fearful for what Dominguez might do, Victim 2 forwarded the communications to the U.S. Marshals Service.

Dominguez's conduct must be considered against a backdrop of increasing threats of violence and actual violence to public figures.  The same year that Dominguez committed the crimes here, the Judicial Security arm of USMS reported investigating 509 threats against 379 different judges nationally.[1]  Threats against the judiciary so far this year are already on pace to surpass the volume in 2024.  *Id.*  This Court cannot accept that placing oneself in danger is merely an unavoidable consequence of choosing to serve the public.  Custodial sentences are necessary to make clear that criminal threats – even where no physical harm occurred – will not be tolerated or normalized.  The threats themselves create fear and in the long run may dissuade people from entering public service, a cost that cannot be quantified, but should not be underestimated.  Dominguez's conduct should not be minimized, and no one should be victimized for properly doing their jobs.

**B.      Dominguez previously threatened others.**

In addition Dominguez's conduct should be viewed as the latest in an alarming series of confrontations with others, from local librarians, to police officers, to elected officials.  *See* PSR ¶¶ 38-40.  With respect to this last category, Dominguez got into a physical altercation with a bystander as he

---

[1] U.S. Marshals Service. "Protective Investigations – Threat Statistics."  Available at https://www.usmarshals.gov/what-we-do/judicial-security/protective-investigations-threat-statistics (last accessed April 22, 2026).

USA SENT. MEM.
CR NO 24-0412 WBS

tried to conduct a citizen's arrest of the former mayor of Martinez, California. PSR ¶ 39. That Dominguez sought out the former mayor and pushed him during the confrontation underscores the potential danger faced by the victims in this case. *See id.* Without greater access to medical records, the government cannot comment on Dominguez's mental state at the time; but in order to protect the public from any further harm, the special conditions included in the plea agreement and requested by Probation requiring compliance with prescribed medication is a needed safeguard.

### C. Dominguez suffers from several mental health and behavioral challenges.

Finally, and as the Court witnessed first-hand, Dominguez suffers from significant mental illnesses. This does not excuse his conduct but provides necessary context towards understanding what measures the Court can take to deter future crimes and protect the public. Throughout the proceedings, Dominguez understood the basis for the case and the charges against him. Unlike other defendants who may not grasp those threshold issues, Dominguez consistently understood the proceedings against him. What he could not do because of his illogical thought patterns was assist his counsel. The government lacks the expertise to assert that the same illogical thinking led to his threats against the victims here, but at a minimum, without adequate supervision and medication, Dominguez is likely to decompensate agains to a point where he poses a danger to himself and others.

As the PSR recounts, support and resources for a high-needs individuals, such as Dominguez, is sorely lacking, despite the best efforts of Dominguez's parents. While the government considered the propriety of a longer period of incarceration in light of the serious nature of the conduct, Dominguez has already served a Guidelines sentence and this moment where he has been restored to competency may be the best opportunity for Dominguez to reintegrate into society in a way that minimizes the chance of recidivism therefore protecting the public and ideally placing Dominguez on a positive path. The conditions suggested by Probation, including a residential stay at a halfway house, coupled with mental health treatment including compliance with prescribed medication, provide needed resources to Dominguez within a system of accountability.

### V. CONCLUSION

Dominguez's conduct warrants a custodial sentence and the Guidelines term that he has served is

USA SENT. MEM.
CR NO 24-0412 WBS

a significant sanction for the serious threats he made.  Upon release, Dominguez must continue to be accountable to this Court to manage his mental health conditions.  The government therefore respectfully requests that the Court impose a sentence of time served, followed by three years of supervised release pursuant to the special conditions outlined in the PSR, and a mandatory $200 special assessment.

DATED:  April 22, 2026

CRAIG H. MISSAKIAN
United States Attorney


_____/s_____
SAILAJA M. PAIDIPATY
Assistant United States Attorney

6

USA SENT. MEM.
CR NO 24-0412 WBS